UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

RUDOLPH AGUILAR,                    )      Case No. CV 15-1766-JEM
                                   )
                Petitioner,        )
                                   )      MEMORANDUM OPINION AND ORDER
        v.                         )
                                   )
ERIC ARNOLD,                       )
                                   )
                Respondent.        )
_____)

**INTRODUCTION**

On March 11, 2015, Rudolph Aguilar ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."). On June 12, 2015, Respondent filed an Answer and lodged the pertinent state records. Petitioner did not file a Reply. The matter is ready for decision.

Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before this Magistrate Judge. The matter is now ready for decision. Having reviewed the pleadings and the lodged records, the Court concludes that the Petition must be denied and this action dismissed with prejudice.

## **PRIOR PROCEEDINGS**

A Los Angeles County Superior Court jury convicted Petitioner of assault with a deadly weapon (count 1) and assault by means of force likely to produce great bodily injury (count 2).  (Cal. Penal Code § 245(a)(1).)  In a bifurcated proceeding, the trial court found that Petitioner had a prior "strike" conviction under the California Three Strikes Law (Cal. Penal Code §§ 667(b)-(i), 1170(a)-(d)) and a prior serious felony conviction (Cal. Penal Code § 667(a)(1)).  Petitioner was sentenced to eleven years in state prison.  (Clerk's Transcript ("CT") at 122, 151-55.)[1]

Petitioner appealed to the California Court of Appeal.  (Respondent's Lodged Documents ("Lodg.") 3, 5.)  On May 15, 2014, the California Court of Appeal vacated Petitioner's conviction in count 2 but affirmed his conviction in count 1.  (See Lodg. 6.)

Petitioner filed a petition for review in the California Supreme Court (Lodg. 7), which was denied on August 13, 2014 (Lodg. 8).

On March 11, 2015, Petitioner filed the instant Petition.

## **SUMMARY OF THE EVIDENCE AT TRIAL[2]**

Based on its independent review of the record, the Court adopts the following factual summary from the California Court of Appeal's unpublished opinion as a fair and accurate summary of the evidence presented at trial:

On the evening of December 14, 2011, Jeffrey Lotz was homeless and preparing to go to sleep beside train tracks near the intersection of North Huntington Drive and Santa Anita Avenue in Arcadia.  Earlier that evening he had been with appellant, who also was homeless, behind bushes at a nearby carwash.  Appellant came out from around a bush and told Mr. Lotz that he had to move.  Mr. Lotz asked what was wrong.  Appellant said he was in his spot, and could not sleep there.  Mr.

---

[1]  The Clerk's Transcript ("CT") has been lodged as Respondent's Lodged Document 1 and the Reporter's Transcript ("RT") has been lodged as Respondent's Lodged Document 2.

[2]  Additional factual details are set forth in connection with specific claims.

Lotz said that he had been given permission by appellant to sleep in that location. Appellant repeated that Mr. Lotz had to move.  Mr. Lotz began to gather his belongings, which were near a four foot by six foot concrete electrical box with a metal cover.  The two men used the box to store items.  Appellant was standing next to a two inch by one inch piece of wood, 39 inches long.

Appellant picked up the piece of wood and "started slamming it" on the metal electrical box "right next" to Mr. Lotz.  Mr. Lotz asked appellant to stop, saying that he was leaving.  Appellant hit the box again, and said Mr. Lotz was not moving fast enough.  Mr. Lotz looked up, and was struck in the head by appellant, who was agitated and yelling.  Mr. Lotz was struck on the hairline, his eye was grazed, and he was cut just below his right eye.  The stick broke on the first blow.

Mr. Lotz asked appellant what he was doing.  Appellant repeated his demand that Mr. Lotz get out, saying that he was not moving fast enough.  Mr. Lotz looked up and put his hand up.  Appellant swung again, hitting Mr. Lotz's hand, deflecting off, and hitting Mr. Lotz on the left cheek.  Mr. Lotz told appellant his hand was broken, to which appellant replied, "'Good.'"  Mr. Lotz got up, walked out to the sidewalk and flagged down police officers.  He received seven stitches at his hairline and six just below his right eye.  Vision in his right eye remained blurry.  His ring finger was broken and was permanently bent.

Arcadia police officers Jeffrey Stark and Brian Long were directed by Mr. Lotz to the location of the assault.  He identified appellant as his assailant.  Appellant, whom Officer Stark knew from previous contacts, was at the scene.  A substance that appeared to be blood was on his clothing.  He was detained by the officers. Officer Cameron Link took over the investigation at the scene.  A big piece of wood was found propped up on the crossing arm at the railroad crossing.  Officer Stark described it as a two-by-four with a rugged texture.  It appeared to have blood on the

3

jagged edge. It was photographed and taken into evidence.  Mr. Lotz identified it as the piece of wood with which appellant had struck him.

Appellant testified in his own defense.  He admitted a dispute with Mr. Lotz about sleeping space near the railroad tracks during which he broke the piece of wood by hitting it against the electrical box.  But he denied striking Mr. Lotz.  He claimed that Mr. Lotz moved around while on the ground, leaned over, and cut himself with the stick.  He said the blood on his clothing was his own, from scratching himself during a yard work job, and then reopening the wound every time he took a cigarette and lighter out of his pockets.

(Lodg. 6 at 2-4.)

**PETITIONER'S CLAIMS**

Ground One: The trial court violated Petitioner's constitutional rights by giving a jury instruction that "failed to separate elements for each count" and failed to instruct the jurors "which elements they had to find."  (Pet. at 5, 10-23.)[3]

Ground Two: The California Court of Appeal should have reversed Petitioner's conviction in count 1, in addition to reversing his conviction in count 2, because the jury did not necessarily find that Petitioner used a deadly weapon in count 1.  (Pet. at 5, 24-27.)

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as amended by AEDPA, states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[3] The Court refers to the pages of the Petition as numbered by the Court's CM/ECF system.

1  Supreme Court of the United States; or (2) resulted in a decision that was based on

2  an unreasonable determination of the facts in light of the evidence presented in the

3  State court proceeding.

4  In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court held that a

5  state court's decision can be contrary to federal law if it either (1) fails to apply the correct

6  controlling authority, or (2) applies the controlling authority to a case involving facts

7  materially indistinguishable from those in a controlling case, but nonetheless reaches a

8  different result. Id. at 405-06. A state court's decision can involve an unreasonable

9  application of federal law if it either (1) correctly identifies the governing rule but then

10 applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or

11 fails to extend a clearly established legal principle to a new context in a way that is

12 objectively unreasonable. Id. at 407-08. The Supreme Court has admonished courts

13 against equating the term "unreasonable application" with "clear error." "These two

14 standards . . . are not the same. The gloss of clear error fails to give proper deference to

15 state courts by conflating error (even clear error) with unreasonableness." Lockyer v.

16 Andrade, 538 U.S. 63, 75 (2003). Instead, in this context, habeas relief may issue only if

17 the state court's application of federal law was "objectively unreasonable." Id. "A state

18 court's determination that a claim lacks merit precludes federal habeas relief so long as

19 'fairminded jurists could disagree' on the correctness of the state court's decision."

20 Harrington v. Richter, 562 U.S. 86, 101 (2011).

21 Under AEDPA, the "clearly established Federal law" that controls federal habeas

22 review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court

23 decisions "as of the time of the relevant state court decision." Williams, 529 U.S. at 412 ("§

24 2254(d)(I) restricts the source of clearly established law to this Court's jurisprudence"); see

25 also Andrade, 531 U.S. at 71. If there is no Supreme Court precedent that controls a legal

26 issue raised by a habeas petitioner in state court, the state court's decision cannot be

27 contrary to, or an unreasonable application of, clearly established federal law. Wright v.

28

5

1  Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam); see also Carey v. Musladin, 549

2  U.S. 70, 76 77 (2006).  A state court need not cite or even be aware of the controlling

3  Supreme Court cases, "so long as neither the reasoning nor the result of the state court

4  decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); see also Bell

5  v. Cone, 543 U.S. 447, 455 (2005) (per curiam).

6      Usually, the federal habeas court must look to the last reasoned state court decision

7  as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.

8  2002).  Under the "look through" doctrine, federal habeas courts look through a state court's

9  silent decision to the last reasoned decision of a lower state court, and apply the AEDPA

10  standard to that decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where

11  there has been one reasoned state judgment rejecting a federal claim, later unexplained

12  orders upholding the judgment or rejecting the same claim rest upon the same ground.").

13      Petitioner presented Grounds One and Two to the state courts on direct appeal.

14  (Lodg. 3, 7.)  The California Court of Appeal denied the claims in a reasoned decision, and

15  the California Supreme Court summarily denied review.  (Lodg. 6, 8.)  The Court will look

16  through the California Supreme Court's silent denial to the Court of Appeal's reasoned

17  decision and will apply the AEDPA standard to that decision.  See Ylst, 501 U.S. at 803.

18                                **DISCUSSION**

19  **I.    GROUND ONE DOES NOT WARRANT FEDERAL HABEAS RELIEF.**

20      In Ground One, Petitioner contends that his rights to due process and a fair trial were

21  violated when the trial court improperly instructed the jury on the elements of the charged

22  offenses.  (Pet. at 5, 10-23.)

23      **A.    Relevant Trial Court Proceedings**

24      Petitioner was charged with two counts of aggravated assault under Cal. Penal Code

25  § 245(a)(1).  In count 1, he was charged with assault with a deadly weapon.  In count 2, he

26  was charged with assault by means likely to produce great bodily injury.  The information

27  alleged that the assault charge in count 1 was a serious felony within the meaning of Cal.

28  Penal Code § 1192.7(c).  (CT at 18-19.)

The prosecutor relied on the same evidence to support both charges, namely, Petitioner's conduct in striking Lotz with the two-by-four.  The prosecutor argued, "[Y]ou have to decide two different counts.  They're the same incident, it's the same facts that support it, but the facts can be used for both counts.  It doesn't have to be separate evidence in support of each count." (3 RT at 630.)  She also argued, "[T]his case is not just a mere simple assault. . . .  It was by means of using a piece of wood that was used as a deadly weapon and, again, with the amount of force that was likely to produce great bodily injury." (3 RT at 632.)  She further argued, "[T]he deadly weapon is a piece of wood, the jagged edge specifically, the wood used in such a manner as to be capable of producing and likely to actually produce death or great bodily injury.  Both strikes were hard, vulnerable part, and actual injuries.  Significant great bodily injury.  [¶]  And as it relates to count 2, again, same facts to support the assault.  And for the second element that it was committed by means likely to produce great bodily injury, each blow was hard, actual injuries that actually caused great bodily injury." (3 RT at 642.)

The jury was instructed on simple assault.  (CT at 87-88.)  It was also given the following instruction (CALJIC No. 9.02) on the two counts of aggravated assault:

> [Petitioner] is accused in Counts 1 and 2 of having violated section 245, subdivision (a)(1) of the Penal Code, a crime.
>
> Every person who commits an assault upon the person of another with a deadly weapon or by means of force likely to produce great bodily injury is guilty of a violation of section 245[(a)(1)] of the Penal Code, a crime.
>
> A "deadly weapon" is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury.
>
> "Great bodily injury" refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm.

1    In order to prove this crime, each of the following elements must be proved

2        1. A person was assaulted; and

3        2. The assault was committed with a deadly weapon or instrument, or

4    by means of force likely to produce great bodily injury.

5    (CT at 85-86.)

6        The jury's verdict forms stated the following: "We the jury in the above entitled action,

7    find [Petitioner] . . . guilty of the crime of ASSAULT WITH A DEADLY WEAPON, to wit, a

8    stick in violation of Penal Code Section 245(a)(1) a felony charged in Count 1 of the

9    Information."  (CT at 104.)  "We the jury in the above entitled action, find [Petitioner] . . .

10   guilty of the crime of ASSAULT BY MEANS LIKELY TO PRODUCE GREAT BODILY

11   INJURY, in violation of Penal Code Section 245(a) a felony charged in Count 2 of the

12   Information."  (CT at 105.)

13       **B.    California Court of Appeal Decision**

14       The California Court of Appeal decided Petitioner's instructional error claim as

15   follows:

16       Appellant argues that each of the two theories of assault should have been

17       given in separate instructions.  He contends the result of combining the two in a

18       single instruction was to allow the jury to find appellant used a deadly weapon as

19       charged in count 1 by relying only on evidence of force.  Similarly, he asserts that as

20       to count 2, use of force likely to produce great bodily injury, the jury could have found

21       appellant used a deadly weapon without considering the requisite force.[Footnote]

22       "When considering a claim of instructional error, we view the challenged

23       instruction in the context of the instructions as a whole and the trial record to

24       determine whether there is a reasonable likelihood the jury applied the instruction in

25       an impermissible manner.  [Citation.]"  (People v. Houston (2012) 54 Cal.4th 1186,

26       1229.)

27       In light of the evidence presented here, we conclude there is no reasonable

28       likelihood the jury applied the instruction in the manner suggested by appellant.  The

8

Supreme Court in <u>People v. Aguilar</u> (1997) 16 Cal.4th 1023 (<u>Aguilar</u>) explained that often the distinction between the two types of assault is not significant.  "Ultimately (except in those cases involving an inherently dangerous weapon), the jury's decisionmaking process in an aggravated assault case under section 245, subdivision (a)(1), is functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used.  As the Court of Appeal reasoned in [<u>People v.</u>] <u>Davis</u> [(1996)] 42 Cal. App. 4th 806, '[A]ll aggravated assaults are ultimately determined based on the force likely to be applied against a person.'  (<u>Id.</u> at pp. 814–815.)"  (<u>Aguilar</u>, at p. 1035.)

The evidence was that appellant used a 39-inch-long piece of broken wood to hit Mr. Lotz more than once on the head.  That evidence established that the stick was a deadly weapon as defined in former section 245, subdivision (a) and charged in count 1, and that appellant used force likely to cause great bodily injury as charged in count 2.  The jury was adequately instructed on these elements.  There is no reasonable probability that the jury applied CALJIC No. 9.02 in an impermissible manner.  In light of our conclusion that there was no instructional error, appellant's arguments regarding prejudice are moot.

Appellant cites the Bench Notes to CALCRIM No. 875 on assault in violation of section 245 to argue the version of CALJIC No. 9.02 given here should have been modified to follow the CALCRIM instruction.  The note cited states a trial court should use separate paragraphs for each of the two theories of assault.[Footnote]  Appellant reiterates that giving CALJIC No. 9.02 without modifying it to provide separate paragraphs for the two theories of assault, as in CALCRIM No. 875, allowed the jury to find appellant used a deadly weapon by relying on evidence of force alone, and to

1    find him guilty of count 2 based on evidence that a deadly weapon was used without

2    consideration of force.

3         As we have concluded, the modification urged by appellant was not required.

4    CALJIC No. 9.02 correctly instructed the jury on the separate theories of assault,

5    which in this case were established by identical evidence.

6    (Lodg. 6 at 5-7.)

7    **C.    Applicable Law**

8         "In a criminal trial, the State must prove every element of the offense, and a jury

9    instruction violates due process if it fails to give effect to that requirement." Middleton v.

10   McNeil, 541 U.S. 433, 437 (2004).  However, not every deficiency in the jury instructions

11   rises to the level of a due process violation.  Id.  A claim of instructional error does not raise

12   a cognizable federal claim unless the error "so infected the entire trial that the resulting

13   conviction violates due process."  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp

14   v. Naughten, 414 U.S. 141, 147 (1973)).  In determining whether a constitutional violation

15   has occurred, the instructional error must be viewed in light of the instructions as a whole,

16   as well as the trial record.  See Estelle, 502 U.S. at 72; Cupp, 414 U.S. at 147.

17        Moreover, instructional errors are generally subject to harmless error analysis.

18   Hedgpeth v. Pulido, 555 U.S. 57, 60-61 (2008); Neder v. United States, 527 U.S. 1, 10-11

19   (1999).  A habeas petitioner is not entitled to relief unless the constitutional error had a

20   substantial and injurious effect or influence in determining the jury's verdict.  Brecht v.

21   Abrahamson, 507 U.S. 619, 637 (1993).

22   **D.    Analysis**

23        Here, the California Court of Appeal held that, under California law, the jury's

24   decisionmaking process as to assault with a deadly weapon is "functionally identical" to its

25   decisionmaking process for assault by force likely to produce great bodily injury.  (Lodg. 6 at

26   6.)  Petitioner's argument that the jury should have been separately instructed on these two

27   offenses contradicts that conclusion and must be rejected because "a state court's

28

1  interpretation of state law, including one announced on direct appeal of the challenged

2  conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S.

3  74, 76 (2005).

4         Moreover, the California Court of Appeal reasonably found that there was "no

5  reasonable likelihood" the jury incorrectly applied CALJIC No. 9.02, since the "distinction

6  between the two types of assault is not significant." (Lodg. 6 at 6.)  Although there was a

7  single instruction that listed the elements of both charges, it is difficult to see how the jury

8  would have ignored the plain language of each charge and used the elements of one

9  charge to convict Petitioner on the other charge.  No reasonable juror would have

10  concluded that an "assault with a deadly weapon," as charged in count 1, did not require

11  there to be an assault with a deadly weapon or that "assault with force likely to produce

12  great bodily injury," as charged in count 2, did not require an assault with force likely to

13  produce great bodily injury.  Rather, it is presumed that the jury understood the plain

14  language of the charges and the instructions it was given.  See Weeks v. Angelone, 528

15  U.S. 225, 234 (2000) (jury presumed to follow and understand judge's instructions); Francis

16  v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of

17  the gravity of their task, attend closely the particular language of the trial court's instructions

18  in a criminal case and strive to understand, make sense of, and follow the instructions given

19  them.").

20         As the Court of Appeal reasonably found, the evidence showed that Petitioner used

21  a "39-inch-long piece of broken wood" to hit the victim "more than once on the head."

22  (Lodg. 6 at 6; see 2RT at 318-19, 324-25.)  As the court noted, the evidence "established

23  that the stick was a deadly weapon as defined" in section 245(a) and charged in count 1,

24  and that Petitioner "used force likely to cause great bodily injury" as charged in count 2.

25  (Lodg. 6 at 6.)  Accordingly, the court reasonably found that the jury was "adequately

26  instructed" on the elements of the two offenses and there was "no reasonable probability"

27  that the jury applied the instruction "in an impermissible manner." (Lodg. 6 at 6.)  In the

28

1  context of the evidence presented at trial, Petitioner cannot demonstrate that any error in

2  the instructions amounted to a due process violation.

3      Moreover, even if the trial court erred, such error did not have a substantial and

4  injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637-

5  38.  The verdict forms show that the jury separately found Petitioner guilty in count 1 of

6  assault with a deadly weapon and guilty in count 2 of assault by means of force likely to

7  produce great bodily injury.  (CT at 104-05.)  The verdict forms show that the jury was able

8  to distinguish between the two offenses.  In addition, given the evidence in the case, if the

9  jury found that Petitioner committed one of the aggravated assault offenses, it necessarily

10  found that he also committed the other aggravated assault offense.  Both counts of

11  aggravated assault were based on the same conduct – Petitioner striking Lotz with the two-

12  by-four.  In these circumstances, the determination whether Petitioner committed an assault

13  with a deadly weapon or an assault by means of force likely to produce great bodily injury

14  was the same.  Both offenses required Petitioner to use the two-by-four in a manner that

15  was likely to produce great bodily injury.  In finding Petitioner guilty, the jury necessarily

16  found that he committed both an assault with a deadly weapon and an assault by means of

17  force likely to produce great bodily injury.  For these reasons, any error was harmless under

18  Brecht because it did not have a substantial and injurious effect or influence in determining

19  the jury's verdict.

20      The state courts' rejection of Ground One was reasonable, and Petitioner is not

21  entitled to federal habeas relief.

22  **II.    GROUND TWO DOES NOT WARRANT FEDERAL HABEAS RELIEF.**

23      In Ground Two, Petitioner contends the California Court of Appeal erred and violated

24  his federal constitutional rights by refusing to reverse his conviction in count 1, in addition to

25  reversing his conviction in count 2.  He contends that his conviction in count 1 should have

26  been reversed because the trial court's supposed instructional error (raised in Ground One

27

28

above) caused a "miscarriage of justice" and, alternatively, because the jury "did not find as a matter of fact" that Petitioner used a deadly weapon.  (Pet. at 5, 24-27.)

### A.    California Court of Appeal Decision

On direct appeal, Petitioner contended, Respondent conceded, and the Court of Appeal agreed that Petitioner was improperly convicted of two aggravated assaults based on a single course of conduct.  (Lodg. 6 at 7-8.)  Accordingly, the court found that "one of [Petitioner's] convictions of violating section 245 must be reversed."  (Lodg. 6 at 8.)

The court then stated:

> The issue, then, is whether we must reverse count 1, the deadly weapon conviction, or count 2, the use of force conviction.  The first is a serious felony which qualifies as a strike (§ 1192.7, subd. (c)(31)), while the second, assault by means likely to produce great bodily injury, is not.  (People v. Fox (2014) 224 Cal. App. 4th 424, 434.)  We may consider admissible evidence from the entire record to determine whether the evidence established a separate basis to conclude the offense was a strike because the assault was committed by personal infliction of great bodily injury on a person, which is a strike under section 1192.7, subdivision (c)(8).  (People v. Delgado (2008) 43 Cal.4th 1059, 1065.)

> Here, CALJIC No. 9.02 informed the jury that it could convict appellant if it found he committed assault by means of force likely to produce great bodily injury.  The jury was instructed, "'Great bodily injury' refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm."  The evidence established that Mr. Lotz suffered great bodily injuries as a result of the blows inflicted by appellant.  Thus in order to convict appellant on count 2, the jury had to find that he used force likely to produce great bodily injury.  This finding also supports the finding that appellant used a deadly weapon, which was defined in the instruction as "any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Where a defendant is improperly convicted of two offenses arising out of the same act, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction on the other offense must be reversed. (People v. Sanders (2012) 55 Cal.4th 731, 736 [discussed in the context of a greater and a necessarily lesser included offense].)  The evidence here supports the verdict on count 1, assault with a deadly weapon.  We affirm that count and reverse the conviction on count 2.

(Lodg. 6 at 8-9.)

### B.    Applicable Law

Federal habeas relief only is available if Petitioner is contending that he is in custody in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a); see also Estelle, 502 U.S. at 67-68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Smith v. Phillips, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution.").  The Supreme Court has "long recognized that a mere error of state law is not a denial of due process," Swarthout v. Cooke, 562 U.S. 216, 222 (2011) (internal quotation marks omitted), and has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw, 546 U.S. at 76.  "A state court has the last word on the interpretation of state law." Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002).

### C.    Analysis

To the extent that Petitioner is claiming the trial court abused its discretion under California law in failing to reverse both assault convictions, his claim is not cognizable on federal habeas review.  See Estelle, 502 U.S. at 67-68; see also Swarthout, 562 U.S. at 222.  The California Court of Appeal, interpreting state law, found that the evidence

1  supported a conviction on count 1 and, therefore, that conviction would stand and the lesser

2  conviction on count 2 would be reversed.  The state court "has the last word on the

3  interpretation of state law," Mendez, 298 F.3d at 1158, and this Court is bound by that

4  interpretation.  See Bradshaw, 546 U.S. at 76.

5          Petitioner attempts to characterize Ground Two as a claim of federal constitutional

6  error by couching it as a due process issue, asserting that the jury did not necessarily find

7  he actually used a deadly weapon.  (Pet. at 26-27.)  However, Petitioner cannot convert this

8  state-law claim into a federal one simply by labeling it a violation of due process.  See

9  Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) (a petitioner may not transform a state

10  law issue into a federal one merely by asserting a violation of due process).

11          Moreover, even if Ground Two could be construed as a federal constitutional claim,

12  the California Court of Appeal reasonably concluded that the jury had in fact found

13  Petitioner used a deadly weapon.  As discussed above with respect to Ground One, the

14  court held that CALJIC No. 9.02 properly instructed the jury that it could convict Petitioner "if

15  it found he committed assault by means of force likely to product great bodily injury," and

16  that the evidence established that the victim "suffered great bodily injuries as a result of the

17  blows inflicted" by Petitioner.  (Lodg. 6 at 9.)  The court thus reasonably found that to

18  convict Petitioner on count 2 (assault by means of force likely to produce great bodily

19  injury), "the jury had to find that he used force likely to produce great bodily injury," and that

20  finding also supported the finding that Petitioner "used a deadly weapon, which was defined

21  in [CALJIC No. 9.02] as 'any object, instrument, or weapon which is used in such a manner

22  as to be capable of producing, and likely to produce, death or great bodily injury.'" (Lodg. 6

23  at 9.)

24          Indeed, no reasonable juror would have convicted Petitioner of assault with a deadly

25  weapon in count 1 without finding that he used a deadly weapon.  Further, given the

26  evidence in the case and as discussed above in connection with Ground One, if the jury

27  found that Petitioner committed one of the charged aggravated assaults, it necessarily

28

found that he also committed the other charged aggravated assault.  Accordingly, the California Court of Appeal reasonably found that the evidence supported the jury's verdict on count 1, and that Petitioner's count 2 conviction should be reversed in accordance with state law.  (Lodg. 6 at 9.)  Thus, Petitioner is not entitled to habeas relief on Ground Two.

## **ORDER**

IT IS ORDERED that the Petition is denied and Judgment shall be entered dismissing this action with prejudice.

DATED: July 29, 2016                              */s/ John E. McDermott*
                                                        JOHN E. MCDERMOTT
                                                        UNITED STATES MAGISTRATE JUDGE